## Case No. 1,188.

### BEARDSLEY et al. v. TAPPAN.

[1 Blatchf. 588.] [1]

Circuit Court, S. D. New York. Oct. Term, 1850.

MERCANTILE AGENCIES—SLANDER—INUENDO.

1. The office of the inuendo in a declaration for slander is to explain the words spoken and annex to them their proper meaning. It cannot extend their sense beyond their usual and natural import, unless something is put upon the record by way of introductory matter, with which they can be connected; then, words which are equivocal or ambiguous, or fall short, in their natural sense, of importing any libellous charge, may have fixed to them a meaning certain and defamatory, extending beyond their ordinary import.

[Cited in Pollard v. Lyon, 91 U. S. 233. See, also, Trussell v. Scarlett, 18 Fed. 214.]

2. Words spoken of a party, which do not necessarily import any thing injurious, may, when taken in connection with other charges made against the party at the same time, and if the whole be published of and concerning the party as a merchant, and with intent to affect his credit and standing as such, have a very different meaning attached to them; and a jury may so find, if they believe the words to have been spoken with such intent.

[See Trussell v. Scarlett, 18 Fed. 214.]

[At law. Suit for libel by Horace Beardsley and John Beardsley against Lewis Tappan, proprietor of a mercantile agency. Heard on demurrer to the declaration. Demurrer overruled, with leave to the defendant to amend.

[Subsequently, the case was tried by a jury. The charge was delivered by Betts, District Judge, (Case No. 1,188a,) and verdict given for plaintiffs for $10,000 damages. A new trial was refused,—Id. 1,189,—and defendant, by writ of error, took the case to the supreme court, where the final judgment was reversed, and a new trial awarded,—Tappan v. Beardsley, 10 Wall. (77 U. S.) 427.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

The first count recited, that the plaintiffs, before the committing of the grievances complained of, were engaged in business as traders and merchants, under the firm of H. Beardsley & Co., at Norwalk, Huron Co., Ohio, and had occasion to visit the city of New-York, for the purpose of purchasing and obtaining goods in the way of their trade and business, and had acquired the good opinion of the persons with whom their house was in the habit of dealing, &c., but that the defendant, contriving and maliciously intending to injure the good name, credit and mercantile standing of the plaintiffs and of the said firm in their trade and business as such merchants, &c., did publish of and concerning the said firm, and of and concerning them in their said trade and business, and as such merchants, the following false, scandalous and defamatory words, that is to say: "H. Beardsley & Co., Norwalk, Huron Co., Ohio," (meaning the said firm,) "July, 1848, have been sued; report says, J. Beardsley's wife," (meaning thereby the wife of the plaintiff John Beardsley,) "is about to apply for divorce and alimony; has put his property out of his hands; if so, their store will be closed soon;" (meaning thereby that the store of the said firm would be closed soon, and meaning and intending to have it suspected and believed, that the plaintiffs and the said firm were no longer worthy of credit, and that one of the partners of the said firm had put his property beyond the reach of the creditors of said firm, and that said firm would soon close their business, and not pay their debts.)

The second count, after referring to the prefatory matter in the first count, alleged a republication of the slander set forth in that count, and that, in addition thereto and together therewith, the defendant published of and concerning the said firm, and of and concerning them in their said trade and business, the following words: "August, 1848, confirms prior report to July," (meaning thereby that the words above set forth respecting the firm were confirmed,) "and say in addition, two more suits in court of common pleas, besides those commenced by Judge Baker," (meaning that two more suits had been commenced against the firm;) "Mrs. Beardsley's petition for divorce will soon be filed;" (meaning thereby the petition of the wife of John Beardsley, one of the plaintiffs, and a member of the firm;) "J. Beardsley," (meaning thereby the said John Beardsley,) "is putting his real estate out of his hands; I," (meaning thereby the defendant,) "do not doubt the firm," (meaning the firm of H. Beardsley & Co.,) "have the ability to do a prosperous business, so long as they are honest, which will be as long as suits their interest;" (meaning and intending to have it suspected and believed, that the plaintiffs and the said firm of H. Beardsley & Co. were no longer worthy of credit, and that the plaintiff John Beardsley, one of the members of the firm, had refused to pay his debts, and had put his prop-

erty beyond the reach of his creditors, and that, although the members of the firm were able to pay their debts, they were dishonest, and would not do so, unless they deemed it suited their interest.)

The defendant demurred to both the counts, alleging that the inuendo subjoined in the first count to the words: "has put his property out of his hands; if so, their store will be closed soon;" and the inuendo subjoined in the second count to the words: "I do not doubt the firm have the ability to do a prosperous business, so long as they are honest, which will be as long as suits their interest;" materially varied, changed, enlarged and extended the sense of the words, and were not warranted by them or by anything before averred in the counts.

Ogden Hoffman, for plaintiffs.
William Allen Butler, for defendant.

NELSON, Circuit Justice. It is objected that the inuendo subjoined to the words in the first count: "has put his property out of his hands; if so, their store will be closed soon;" enlarges and extends the said words, and contains matters or charges not warranted by them, or by any of the words embraced in the count.

The office of the inuendo is to explain the words contained in the libel, and annex to them their proper meaning. It cannot enlarge or extend the sense of the expressions beyond their usual and natural import, unless something is put upon the record by way of introductory matter, with which they can be connected. Then, words which are equivocal or ambiguous, or fall short in their natural sense of importing any libellous charge, may have fixed to them a meaning certain and defamatory, extending beyond their ordinary import. Rex v. Horne, Cowp. 682; Hall v. Blandy, 1 Younge & J. 480; Van Vechten v. Hopkins, 5 Johns. 211; Miller v. Maxwell, 16 Wend. 9.

In this case, the only introductory matter set out, besides the usual recitals in an action of slander, is, that the plaintiffs are merchants, engaged in trade and business under the firm of H. Beardsley & Co., with the usual colloquium; and the inuendo, in giving explanation and meaning to the words, connects them with the business character and relations of the plaintiffs.

We must, therefore, take the words set forth in the first count in the declaration as published of and concerning the plaintiffs in their character as merchants, and enquire whether, in that connection and under the circumstances stated, the inuendo has carried the meaning imputed beyond that warranted by the libellous charge. And, in doing so, we must look to the whole and every part of the libel, in order to ascertain the full extent of the injurious imputations, and to see how they would naturally be understood by the neighbors and acquaintances of the plaintiffs,

and especially by those with whom they were connected in business transactions. Looking at the libel, and the several injurious charges therein contained, with these considerations in view, we cannot say, as matter of law, that the words do not convey or could not have been intended to convey to those in whose presence they were published the meaning imputed to them. On the contrary, they may have been published under circumstances and in a way that would naturally convey to the hearer that meaning, especially if published with an intent to affect the credit of the plaintiffs as merchants, as charged in the declaration.

The counsel for the defendant selects a part of the words of the libel, and insists that they do not convey the meaning imputed. This might be admitted, and still the demurrer not be well taken. When the words are taken detached from the context, their meaning may be different from what it is when they are taken in connection with the text and the subject matter. The charge "has put his property out of his hands," and nothing else, might be very innocent; and the words "if so, their store will be closed soon" might not necessarily import anything wrong or injurious. But, when those words are taken in connection with the charge that the plaintiffs had been sued, and that the wife of one of them was proceeding against him for a divorce and alimony, and the whole is published of and concerning them as merchants, and with the intent to affect their credit and standing in the community, a very different meaning attaches; and, for aught that we can see, to the full extent charged. That is, the jury may so find, if they believe the publication to have been made with a view to affect injuriously the credit and standing of the plaintiffs as traders and merchants. The same view, we think, applies to the second count, which need not be more particularly referred to.

There must be judgment for the plaintiffs, with leave to the defendant to amend.